ASA K. BRUCE *vs.* PETER R. KEOGH.

An application, of a debtor committed to jail on execution, to be admitted to take the poor debtors' oath, must, since *St.* 1844, c. 154, as well as under Rev. Sts. c. 98, be made to the jailer, and through him to a justice of the peace. And if such debtor, who has given bond for the prison limits, is admitted to take the oath on an application made by him directly to the justice, and thereupon goes without those limits, it is a breach of the bond.

THIS was an action of debt on a bond for the prison limits, executed by Joseph A. Merrill as principal, and by the defendant and John C. Farrell as sureties. The defence relied on was a discharge of Merrill by taking the poor debtors' oath The facts of the case appear in the opinion.

*E. W. Bond,* for the plaintiff.

*J. M. Stebbins,* for the defendant.

BIGELOW, J. The right of the plaintiff to recover in this action depends on the question, whether Merrill, the principal debtor, was duly admitted to take the poor debtors' oath, and thus legally discharged from his imprisonment. The proceedings, under which the discharge was obtained, were intended to conform to *St.* 1844, *c.* 154, so far as it modifies the

provisions of Rev. Sts. *c.* 98.   The objection taken to their validity is, that the debtor himself made application directly to the magistrate, instead of making a representation to the jailer, and through him to a justice of the peace, of his desire to avail himself of the benefits of the act for the relief of poor debtors.

As the jurisdiction of the magistrates, and their power to administer the oath to the debtor, are wholly derived from statute, it is essential to the regularity of the proceedings and the due discharge of the debtor, that the requisitions of the statutes should be strictly complied with.   *Putnam* v. *Longley*, 11 Pick. 487;   *Slasson* v. *Brown*, 20 Pick. 436;   *Young* v. *Capen*, 7 Met. 287.

By Rev. Sts. *c.* 98, § 1, it is provided, that when any person, committed on execution for any debt, " shall represent to the jailer that he is unable to pay the debt, for which he is imprisoned, and is desirous to take the benefit of the law for the relief of poor debtors, the jailer shall make known the same to some justice of the peace for the county."   Under this provision, as well as under the statute of 1787, *c.* 29, § 1, which preceded it, the practice has been uniform, to follow its directions, and make the application to the magistrate through the jailer.   Such being the plain requisition of the statute, no other application would be legal, and a substantial compliance with it has always been deemed necessary.   *Bussey* v. *Briggs*, 2 Met. 132.

By *St.* 1844, *c.* 154, § 10, it is enacted, that whenever any person shall be committed to jail on execution, whether he is in close confinement, or has given bond for the prison limits, and is desirous of taking the oath prescribed by law for poor debtors, " the proceedings shall be conformable to the provisions of law contained in the ninety eighth chapter of the revised statutes; provided, that the notice to be given to the creditor shall in all cases be given in the same manner as is provided in this act for the relief of persons arrested on mesne process."   The single question therefore is, whether, by the true construction of this act, in cases of commitment on execution, the representation to the jailer of the debtor's desire

to take the oath, and the application by the jailer to the magis-
trate, are dispensed with, so that a notice may issue to the
creditor upon an application made directly to the magistrate
by the debtor. By reference to § 1 of this act, it will be found
that a debtor arrested on mesne process "may give notice in
writing to any justice of the peace in the county where the ar-
rest is made," that he is desirous of taking the oath; and by § 2,
it is made the duty of the justice so notified to appoint a time
and place for the examination of the debtor, and "to issue a no-
tice thereof to the plaintiff." By these provisions, two notices
are necessary in case of arrest on mesne process; first, the no-
tice by the debtor to the magistrate; second, the notice by the
magistrate to the creditor. When, therefore, it is provided in
§ 10, that, in cases of commitment on execution, the proceed-
ings shall in all cases conform to Rev. Sts. *c.* 98, except in
the "notice to be given to the creditor," it clearly refers to that
notice only, and excludes the notice to the magistrate, which
is to be regulated by Rev. Sts. *c.* 98. The act of 1844 care-
fully distinguishes between the notice to the magistrate by
the debtor, and the notice by the magistrate to the creditor,
and §§ 1 & 2 particularly prescribe the mode in which each is
to be given. It cannot, therefore, be reasonably supposed,
that these two notices would be confounded in § 10, and both
included under the term of notice to the creditor. The inten-
tion of the legislature was, to leave the proceedings, in cases
of commitment on execution, unchanged in all respects, and
to be regulated under Rev. Sts. *c.* 98, except in the single
particular of notice to the creditor, which was to be given
according to the provisions of the act of 1844, *c.* 154, in case
of arrest on mesne process; otherwise, there was no necessity
of a separate provision for cases of commitment on execution,
as they might have been included in the cases enumerated in
§ 1. We are therefore of opinion, that in this case the ap-
plication should have been made to the jailer by the debtor,
and by the jailer to the magistrate, in compliance with Rev.
Sts. *c.* 98, § 1, and that, having been made directly to the ma-
gistrate by the debtor, it is not in conformity with the law,
and is void.

It was urged in argument, that a notice to the creditor was equally effectual, whether given upon application by the debtor directly to the magistrate, or by a representation to the jailer and through him to the magistrate. This may be so, and many other modes of notice might be equally effectual. But the legislature has prescribed but one mode, and it is not for the court to supply by construction that which the legislature have not seen fit expressly to enact.

A question, similar in many respects to that which we have now considered, arising upon statutes containing provisions identical with those contained in the act of 1844, *c.* 154, and Rev. Sts. *c.* 98, has been before the supreme court of the state of Maine, and decided in conformity with the views herein given. *Knight* v. *Norton*, 3 Shepl. 337. See also *Hanson* v. *Dyer*, 5 Shepl. 96; *Neil* v. *Ford*, 8 Shepl. 440.

*Judgment for the plaintiff.*